ADELAIDE G. SUTPHEN, as Executrix, etc., of JOHN H. SUTPHEN, Deceased, Appellant, *v.* MARY MOREY and Another, Respondents, Impleaded with RAYMOND J. BURNS and Another, Defendants.

First Department, October 30, 1925.

Mortgages — foreclosure — mortgage given to secure notes — defenses of payment, lack of consideration, and account stated — counterclaim for alleged overpayment — receipts and other documents introduced by defendants to show payments were forgeries — error to restrict cross-examination of defendants' witnesses — inconsistent findings constitute reversible error — res adjudicata — judgment in action against present defendants by assignee of claim for rent in favor of plaintiff's estate not res adjudicata — fact that judgment was rendered by inferior court does not prevent judgment being res adjudicata — finding of forgery in said action is not binding in present action.

In an action to foreclose a mortgage given to secure a promissory note, the defenses of payment, lack of consideration, and account stated, and a counterclaim for an alleged overpayment, were not proven, since it appears that all of the receipts and other documents introduced in evidence to establish said defenses clearly are forgeries; this fact appears not only from expert testimony but from a comparison of the signatures to the documents with a genuine signature of the mortgagee.

It was error for the court to deny the plaintiff the right to cross-examine defendants' witnesses concerning payments made by them to the defendants, which testimony was introduced for the purpose of showing the ability of the defendants to make the alleged payments on the promissory note, since the cross-examination desired was for the purpose of showing that the witnesses had not made the payments they claimed to have made to the defendants.

Reversible error was committed in making inconsistent findings of fact: (1) That the note in question was executed for value; (2) that the note was given without any consideration, and (3) that the defendants had performed all the terms and conditions of the agreement and had paid the note.

A judgment in an action recovered in the Municipal Court of the City of New York by an assignee of a claim against the defendants for rent of the premises in question, which claim was assigned to the plaintiff therein by the plaintiff's estate in this action, is not *res adjudicata* against the defendants herein, for that action was not between the same parties, it did not affect the same cause

of action, the former judgment would not have been a bar to the plaintiff recovering in this action had it been begun here, and the Municipal Court would have had no jurisdiction of the present cause of action.

Accordingly, a finding by the Municipal Court that a receipt introduced in the prior action was a forgery is not binding in this action.

But the fact that the judgment in the prior action was rendered by an inferior court would not prevent it from being *res adjudicata* in this action.

APPEAL by the plaintiff, Adelaide G. Sutphen, from a judgment of the Supreme Court in favor of the respondents, entered in the office of the clerk of the county of New York on the 16th day of March, 1925, upon the decision of the court rendered after a trial at the New York Special Term.

*Gilbert D. Lamb*, for the appellant.

*Ernest M. Garbe* [*Leonard F. Fish* with him on the brief], for the respondents.

DOWLING, J.:

This action was brought by plaintiff, as executrix of the will of John H. Sutphen, deceased, to foreclose a second mortgage on premises 425 Convent avenue, in the city of New York, said mortgage being given in the form of a deed absolute, dated January 12, 1922, but really to secure the payment of a promissory note in the sum of $15,000, signed by the defendants Morey, bearing date January 10, 1923, which note read as follows:

" $15,000.00                         NEW YORK, *January* 10*th,* 1923.

" Six months after date, for value received we promise to pay to the order of John H. Sutphen or order Fifteen thousand Dollars with interest at six per cent. per annum payable at 204 5th Ave. M. & M. Bank, having deposited with him as collateral security for payment of this or any other liability or liabilities of ourselves to said John H. Sutphen due or to become due, or that may be hereafter contracted, the following property, viz: Deed of Mary Morey, January 12th, 1922, conveying property 425 Convent Ave., Borough of Manhattan, City, County and State of New York, more particularly described in said deed, recorded in the Register's office, N. Y. County, under section seven, block 2063, Land Map of the County of New York.

" The market value of which is now $25,000 with the right on the part of said John H. Sutphen from time to time to demand such additional collateral security as he may deem sufficient should the market value thereof decline, and upon our failure to comply with any such demand, this obligation shall forthwith become due, with full power and authority to sell or assign in case of such default or of the non-payment of any of the liabilities above mentioned

at maturity, to sell, assign and deliver the whole, or any part of such securities or any substitutes therefor or additions thereto at any broker's board or at public or at private sale, at their option, at any time or times thereafter without advertisement or notice to ————— and with the right on —— part to become purchasers thereof at such sale or sales, freed and discharged of any equity of redemption. And after deducting all legal or other costs and expenses for collection, sale and delivery, to apply the residue of the proceeds of such sale or sales, so made, to pay any, either or all of said liabilities, as said ————— shall deem proper, returning the overplus to the undersigned; and will still remain liable for any amount so unpaid.

" MARY MOREY,
" JOHN J. MOREY."

The complaint alleges that on and prior to January 13, 1922, John J. Morey was indebted to John H. Sutphen in the sum of $15,000; the execution by Mary Morey to secure payment of said sum of a deed absolute in form, though only intended to be given as security for the payment of said indebtedness; the execution and delivery of the promissory note above set forth signed by said defendants; the failure to pay any part of said note upon demand; the death of Sutphen on August 26, 1923, leaving a last will and testament duly admitted to probate in the county of Monmouth, State of New Jersey; and the other usual allegations in a complaint in an action to foreclose a mortgage.

The answer of the defendants admits the execution and delivery of the note and deed in question, but denies the other allegations of the complaint. It sets up as separate defenses: (a) Payment; (b) absence of consideration; as a counterclaim it alleges the engaging by John J. Morey and Sutphen in a business venture of buying and selling general merchandise and the equal division of the profits and losses between them; the contribution of $7,500 by Sutphen to the capital of the firm, his advance of $7,500 more as Morey's contribution thereto, and the conveyance of title to the premises in question as security for the said advance, to be repaid from the profits of the business; the execution of the note for Sutphen's accommodation, without consideration, by the Moreys, and the repayment by Morey to Sutphen of the sum of $7,500 advanced for him, in addition to a further amount of $4,350 loaned, advanced, paid out and expended at Sutphen's request, for which John J. Morey demands judgment  There is a further defense and counterclaim of an account stated between the parties, as the result of which Sutphen was found to be indebted to Morey in the sum of $4,350.

Upon the trial the plaintiff put in evidence the deed and promissory note, the execution and delivery of which had been admitted by the answer, and also an exemplified copy of the letters testamentary issued to her upon the estate of the decedent. The interest was proved to amount to $1,650. All this was done without any objection.

The defendants then endeavored to prove their defense of payment. Their principal witnesses were Lawrence Vineburgh and Ford M. Booth. Vineburgh, who gave his business as a musician, working for a theatrical office, testified to the making of a written agreement between Sutphen and John J. Morey as follows, on the letterhead of the Hotel Breslin, Twenty-ninth Street and Broadway, New York city:

" This agreement made this 5th day of January, 1922, between John H. Sutphen and John J. Morey is as follows:

" We Sutphen and Morey agree to go into the business of buying and selling general merchandise on a fifty-fifty basis, sharing equally the profits as well as the losses. In order to establish the business referred to Sutphen is to put in $15,000.00 in cash and Morey is to secure Sutphen the property 425 Convent Avenue, N. Y. City. Out of the first profits Sutphen is to receive $7,500.00 and transfer back property 425 Convent Avenue. And it is further agreed that Sutphen is to take the balance of the $15,000.00 out of the second profits of the business and Morey is then to be paid for his merchandise owned by him up to 970 packages. Thereafter all monies are to be divided equally between Sutphen and Morey — Sutphen to take care of Bronner and Stewart — Morey to take care of Brown and McCormack in the way of commissions in selling and buying merchandise.

" Signed this 5th day of January, 1922.

" JOHN H. SUTPHEN
" JOHN J. MOREY.

" Witness:
        " LARRY VINEBURGH."

The transaction between Sutphen and Morey sought to be established by Vineburgh's testimony was one to deal in liquor, in violation of the Prohibition Laws, but no reason was ever given why Sutphen should have taken Vineburgh into his confidence and allowed him to know the details of his alleged illegal venture with Morey. Nor did either Vineburgh or Booth have any interest whatever in the venture, or claim to have, though Vineburgh admitted he had a dozen transactions or more with Morey in the purchase and sale of liquor within a year or two before 1924, and

Booth contended he had no transaction with Morey except in regard to the sale of an interest in a car coupler to him, though he admitted he had withdrawn liquor from storage and sold it in 1922 and 1923, but claimed he had no dealings in liquor with Morey except indirectly through his introduction by Morey to Sutphen.

Vineburgh testified to conversations he had heard between Morey and Sutphen about the liquor which had left Cincinnati and was on its way for sale to a druggist at Portchester for $80,000, when it was seized at Buffalo by the Federal authorities.

Vineburgh claims to have been present on June 14, 1923, when Sutphen is claimed to have executed a lease of the premises 425 Convent avenue (deeded to him by the Moreys) back to the Moreys for a period of six months at a monthly rental of $100. Then, according to Vineburgh, he was fortuitously present when Morey paid Sutphen $6,500 on account of the $15,000 obligation. The alleged receipt is fortunately written at the bottom of a letter from Sutphen demanding payment of the note for $15,000. The letter from Sutphen was on the letterhead of the office of George A. Helme, where he was a bookkeeper. The heading is partially effaced in the reproduction, but enough is left to show that it came from his place of business, room 413, 175 Fifth avenue, which appears on his signature card at the Lincoln Trust Company. The letter was as follows:

" *July 9, 1923.*

" Mr. John J. Morey,

    " 425 Convent Avenue,

        " New York City.

" Dear Mr. Morey.— Your note of $15,000 dated January 10, 1923, for six months will be due at the Mechanics & Metals National Bank, 204 Fifth Avenue, tomorrow. I trust you will arrange to make a partial payment at least on this note and give a new note for the balance, as I have great need of this money at the present time to help finance the Cellometer Corporation.

" I had expected to see you ere this to learn the result of your recent negotiations for the settlement of your claim at Reading.

" Awaiting your advices in the matter, I remain,

" Very truly yours,
" JOHN H. SUTPHEN."

  At the foot of this letter appears the following, claimed to have been signed by Sutphen, the handwriting in the body of the receipt being that of Morey:

" *July 13, 1923.*

" Rec'd of John J. Morey the sum of Sixty-five hundred dollars ($6500.00) as part payment on note of $15,000.00 also on acct.

of his residence at 425 Convent Ave., N. Y. City, note secured by said property, balance to be paid on settlement of claim at Reading, Pa.

" JOHN H. SUTPHEN.

" Witness:

" LAWRENCE A. VINEBURGH."

Vineburgh claimed that the $6,500 was paid in cash, six $1,000 bills and five $100 bills, Morey saying, according to the former, that he had had a transaction with Booth earlier in the day when presumably he had received the money. Then Vineburgh was again fortuitously present at the Hotel Breslin, on August 10, 1923, when Morey paid Sutphen $2,100, one $1,000 bill, eleven $100 bills, and Morey himself prepared a receipt on the letterhead of the Hotel Breslin, as follows, which Sutphen is alleged to have signed:

" *August 10th,* 1923.

" Rec'd of John J. Morey the sum of Twenty-one hundred dollars, ($2100.00) in part payment, on note of $15,000.00, of which there is a balance of $8500.00 due since July 13th, leaving a balance now due of $6400.00.          · " JOHN H. SUTPHEN.

" Witness:

" LARRY VINEBURGH."

Then Vineburgh happened again to be present on August 17, 1923, at the Hotel Breslin, when Sutphen said he wanted more money from Morey, and the latter finally paid him in cash $1,950, writing out a receipt on the hotel letterhead, alleged to have been signed by Sutphen, as follows:

" *August 17th,* 1923.

" Rec'd of John J. Morey the sum of Nineteen hundred and fifty dollars ($1950.00) in payment of interest on note of $15000.00 also six months lease on 425 Convent Ave.; N. Y. City, from June to December, 1923 — bal. of $6400. to be paid on Reading Settlement, without interest, owing to house, lease and note being a partnership deal on a fifty-fifty basis.

" JOHN H. SUTPHEN.

" Witness:

" LARRY A. VINEBURGH."

Not satisfied with showing payments by Morey to Sutphen amounting to $10,550, Vineburgh testified to his fortunate presence at a new conference at the Hotel Breslin on August 20, 1923, when Morey said, " Well, we may as well figure out what we owe each other or whether we do," whereupon " they took out pencil and paper," and Sutphen promptly said, " Well, John, you have overpaid me $4500," the amount subsequently being changed by Vineburgh to $4,350, and again on the letterhead of the Hotel Breslin the following letter (typewritten) being alleged to have been signed by Sutphen:

" *August* 20, 1923.

" I hereby agree to return to or allow John J. Morey $4350 over payment as per our agreement of January 5th, 1922 owing to the fact that the 970 packages were seized by the government at Buffalo *en route* to Portchester, N. Y. from Cincinnati.

" And later on Morey is to be reimbursed in part for loss of his 970 packages of merchandise at Buffalo referred to in agreement of January 5th, 1922.

" Also it is agreed that the $4350.00 includes note of $15,000.00 of January, 1923, and note of June, 1923, for $600.00.

" Witness:                                        " JOHN H. SUTPHEN.

   " LARRY A. VINEBURGH."

The witness Booth before referred to, claiming now to be in the real estate business, subleasing an office and engaged in buying cut-over lands and improving and reselling them, testified that in some transactions he paid on July 10, 1923, to Morey $6,500 in six $1,000 bills and five $100 bills, and to an alleged admission by Sutphen that Morey had paid this money to him. He further paid Morey $2,250 on August eighth and $2,000 about August fifteenth. He also testified to an admission by Sutphen that he had been overpaid by Morey about $4,500, the amount finally being fixed at $4,350. On cross-examination he was asked where he got the $6,500 he claimed he paid to Morey, but an objection to the question was sustained. He admitted he had a bank account at the time he made the three alleged payments, but the court refused to allow him to be interrogated as to why he had not used a check for these payments, nor would the court allow him to be interrogated as to how he came to be at the Hotel Breslin when the alleged accounting was had. Booth produced four alleged receipts given to him by Morey for the sums in cash he gave him, ostensibly for a half interest in " Samson Car Coupler Co.," but the court refused to allow any examination as to the apparent similarity in the typewriting. Booth first swore they were not typewritten in his office, and then testified that they were written there. The court would not even allow the witness to be asked if he had caused the receipts to be typewritten before or after the payments were made, or whether they were all made on the same typewriter.

The other witnesses called on behalf of the defendants were a former coemployee of Sutphen; a business associate of his for eight months; an examiner of handwriting for the Burns International Detective Agency; and an expert whose testimony was stricken from the record on the court's own motion, after he had testified that the signature of Sutphen to the alleged receipt of

July 13, 1923, was not genuine, after it was claimed that he had testified to the contrary in the Municipal Court action of *Skelly* v. *Morey.* Neither of the Moreys was called as a witness.

For the plaintiff, an employee of the Lincoln Trust Company and its successor, connected for twenty-one years with the former, who had known Sutphen for ten or twelve years, was familiar with his signature, and had repeatedly passed upon his checks drawn upon that institution, testified that the signature of Sutphen to the five papers relied on by defendants, *i. e.*, the alleged agreement of January 5, 1922, the receipts of July 13, 1923, August 10, 1923, August 17, 1923, and the so-called accounting of August 20, 1923, were not genuine, but were forgeries; and on cross-examination he developed the reasons for his testimony. To the same effect was the testimony of John Vreeland Haring, for thirty-five years a handwriting expert, who swore that the questioned signatures were forgeries and merely tracings of a genuine signature of Sutphen's and developed the grounds for his so finding with convincing force on his cross-examination. An attorney who had known Sutphen for two years and had seen him write his name many times, also pronounced the disputed signatures to be forgeries. David N. Carvalho, an expert in handwriting and inks, was called to testify that in an exhibit dated April 28, 1923, a tick or dot had been added after Sutphen's name after his signature had been written, in a different ink, and he so testified and the court said that having examined the paper he would take judicial notice that such was the fact.

It is impossible, in my opinion, to compare the concededly genuine signatures of Sutphen with those attached to the five disputed writings, without reaching the inevitable conclusion that the latter are forgeries. Sutphen, an experienced bookkeeper, wrote a characteristic signature — clear, fluent, rapid and smooth, with evidently apparent freedom of motion, and uninterrupted. The forgeries are labored, hesitating, constantly interrupted, cramped and sloping upwards toward the end of the writing, forced and unnatural. The result reached after reading all the testimony as to these signatures, and comparison of all of them, is that the testimony clearly preponderates that the disputed signatures are forgeries and were never signed by Sutphen. The best demonstration of this is the comparison of the real signature of Sutphen, written on his own letterhead under date of July 9, 1923, with the forged signature below on the same paper claimed to have been written at the Hotel Breslin four days later.

The testimony of the witnesses Vineburgh and Booth, in my opinion, is unworthy of belief and no credence should be attached

to any material statements made by them, which were part of the plan to escape liability upon the note and mortgage in question. Reversible error was committed by the· learned trial court in unduly restricting the cross-examination of both these witnesses, which in itself would require the reversal of the judgment and the granting of a new trial. But the conclusion reached as to the non-genuineness of the signatures renders this unnecessary. The defense of payment, therefore, based on these signatures and the testimony of Vineburgh and Booth not only was not established, but the preponderance of the evidence is against it.

Moreover, the learned trial court made findings so inconsistent that the judgment could not stand.

Thus, the learned court found:

" 19th. That for value and for the purpose of securing the payments to the said John H. Sutphen of the total sum of $15,000, and on January 10, 1923, the said defendants, Mary Morey and John J. Morey made, executed and delivered to the said John H. Sutphen, a promissory note in words and figures as follows: " (here follows in full the note in suit.)

" 20th. That the said deed above mentioned dated January 12, 1922, by Mary Morey to John H. Sutphen, was made, executed and delivered by the said Mary Morey to the said John H. Sutphen as security for the payment to the said John H. Sutphen, of the sum of $15,000 and interest represented by the said promissory note.

" 21st. That no part of said note has been paid."

As opposed to this he also found:

" 8a. That the note of $15,000, dated January 10, 1923, was made by the defendants Morey, without any consideration having been received by them or flowing from said Sutphen to them, and was wholly for said Sutphen's accommodation. * * *

" 13th. That prior to the 20th day of August, 1923, the said defendant Morey had duly performed all of the terms, conditions and provisions on his part of said agreement to be performed, and had paid and repaid to the said Sutphen the said sum of $7,500, the amount advanced by said Sutphen for said Morey as his contribution to the said business venture pursuant to the agreement of January 5, 1922, and had paid and repaid to the said Sutphen, the said sum of $7,500, that portion of the said note of $15,000, for which the said defendants Morey were liable, and for which the said note of $15,000 of January 13, 1923, had been made."

And he also found as follows, which findings are without evidence to support them:

" 8th. That heretofore, and on the 13th day of January, 1923, the said defendants Morey, in pursuance and as part of the agreement

herein referred to, did make, execute and deliver to the said Sutphen their promissory note in writing for $15,000, of which amount the said sum of $7,500 represented the said sum of $7,500, which the said Sutphen had theretofore advanced for Morey, under the agreement of January 5, 1922, and said defendants Morey did not receive at said time the said sum of $15,000 from the said Sutphen or any other amount other than the sum of $7,500 which had theretofore been advanced by the said Sutphen, for and on behalf of the said defendant Morey, and that the aforesaid promissory note was made by the said defendants Morey for the accommodation of the said Sutphen.   *   *   *

." 17th. There was no recording mortgage tax paid by John H. Sutphen on April 7, 1922, or at any time thereafter for the instrument now claimed to be a mortgage, at the time it was recorded."

In fact, it only requires the reversal of the findings of fact and conclusions of law found at the request of defendants and duly excepted to and the addition of the plaintiff's proposed fourth finding of fact, to furnish a basis for the requisite conclusions of law proposed by plaintiff and for judgment in her favor.

There was offered and received in evidence the judgment roll in the action of *Skelly* v. *Morey*, in the Municipal Court of the Borough of Manhattan for the Seventh Judicial District. This action was brought by John T. Skelly against the same defendants Mary Morey and John J. Morey, upon an assigned claim by the Sutphen estate based upon the promissory note for $600 executed by defendants on June 14, 1923, evidently for the rent under the six months' lease to them by Sutphen of the Convent avenue house. In that action the same defense of payment and release was set up and the witness Vineburgh admitted under cross-examination on the trial of the present action that the paper which was offered in evidence by defendants' counsel in the Municipal Court action was the alleged receipt dated August 20, 1923, claimed to have been signed by Sutphen at the bottom of his letter to Morey. Defendants' counsel, called as a witness, admitted the paper was there offered in evidence and it is evident that it was the document referred to by Mr. Justice CRANE in giving judgment for plaintiff in that case, wherein he said:

" I hereby find and decide that the plaintiff is entitled to recover from defendants $645, after trial had. The purported release is a clumsy forgery and the testimony of the witness of its execution unworthy of belief. The presumption of value (Neg. Inst. Law, Sec. 98), is not overcome and the Clerk is hereby directed to enter judgment accordingly. 5 days' stay of execution.

" SIDNEY C. CRANE,<br>" <em>Justice.</em>"

Plaintiff contends that this is *res adjudicata* as to the forgery of Sutphen's signature upon the document in question. The learned trial court, when the judgment roll was offered, said: " The Court: How is that binding on me? Do you think that the judgment of the Municipal Court is binding on me? Mr. Lamb: Yes, sir, as far as these specific facts are concerned. The Court: I do not agree with you. Mr. Lamb: In a court of competent jurisdiction where a specific question has been decided, I deem it is binding on all courts thereafter. And I therefore offer the judgment roll in that case in evidence." The judgment roll was finally received in evidence.

Of course if the judgment were otherwise a bar, the fact that it was rendered in a Municipal Court would not deprive it of force.

The rule is thus stated in 34 Corpus Juris (at p. 759): " A judgment on the merits rendered by an inferior court, such as that of a justice of the peace, is a bar to another suit between the same parties on the same cause of action, either in another court of the same grade or rank or in any other court, unless the court rendering such judgment was without jurisdiction of the action."

But I do not believe the judgment was *res adjudicata* for the following reasons: (a) It was not between the same parties. While the defendants were the same, in the Municipal Court action the plaintiff was not the estate of John H. Sutphen, but John T. Skelly, to whom the note had been assigned and delivered and who was alleged in the complaint to be the owner thereof. Nor was the plaintiff in that action in privity with the present plaintiff, for he has no right, title or interest in or to the present cause of action.

In the case of *Bigelow* v. *Old Dominion Copper Co.* (225 U. S. 111) Mr. Justice Lurton said (at p. 128): " What is privity? As used when dealing with the estoppel of a judgment, privity denotes mutual or successive relationship to the same right of property."

(b) It did not affect the same cause of action. One was on a $600 note, the other on a separate and distinct note and mortgage for $15,000.

(c) The former judgment would not have been a bar to plaintiff recovering in this action, had it been against her. The plaintiff therein was not in privity with her, so far as concerns either the former or the present action. Furthermore she was a foreign executrix and a non-resident of the State. Not having been a bar against her it cannot be a bar against defendants, since mutuality of estoppels is essential.

(d) The Municipal Court would have had no jurisdiction of the present cause of action, and its decision in a separate action upon

the weight to be given to certain evidence offered to it cannot control upon the trial of an entirely different suit.

The judgment appealed from should, therefore, be reversed, with costs to appellant, and judgment directed to be entered in accordance with the prayer of the complaint, with costs.

The findings of fact and conclusions of law to which exceptions have been taken are reversed, and the additional finding of fact and conclusions of law proposed by plaintiff are found. Settle order and judgment on notice.

CLARKE, P. J., FINCH, McAVOY and BURR, JJ., concur.

Judgment reversed, with costs to appellant, and judgment directed to be entered in accordance with prayer of the complaint, with costs. Settle order on notice.